Okay, so Pujol Moreira v. BNP Comparatives. All right, so Mr. Robinson, you have ten minutes. You have reserved two minutes for rebuttal. Good morning. Good morning and may it please the court. My name is Dwayne Robinson. I'm here on behalf of the Plaintiff Appellants. Can I ask a, let's brief. It's simple, it may be simplistic, but maybe you can help me out. Section 608-4, which is the time bar, says an action under Section 608-2 of this title may not be brought more than two years after the trafficking giving rights to the action has ceased to occur. All right. I can read. Okay, period. What I want you to explain to me sometime between now and the end of the morning is why is it necessary having that statute? What do we get from trying to put that into either the statute of limitations hold or the statute of repose hold? Why can't we just follow the statute and let my law clerks worry about whether it's called a limitation or repose? Sure. Well, thank you for the question. The reason why it matters is the defendants in this case have thrown up a number of arguments to keep our clients out of court, to bring their long-held claims against Sak-Chen and Paribas related to the trafficking in our client's property. And if the court agrees with us that 608-4 is a statute of limitations, equitable tolling is permitted to allow this case to proceed to the discovery stage. What our friends on the other side want you to conclude is that it's a statute of repose. Because in their view, if it's a statute of repose, then there is no opportunity for tolling and they- I still have three words to introduce it. Then there's a- just say them again. It's me. I'm sorry, Your Honor? Start the sentence again, I'm sorry. Oh, start the sentence again. So what our friends on the other side are saying is that if it is a statute of repose, 608-4, then there would be no opportunity for equitable tolling. And therefore, it'd be another basis for them to keep us out of court. I'm glad that Your Honor asked that question because this case largely turns on whether or not the face of the complaint revealed as a matter of law that our claims were time-barred. And respectfully, it did not. Now, if this court resolves the timeless question in the favor of the plaintiffs, it not only resolves whether or not the claim is timely, it resolves this debate about whether it's statute of repose or statute of limitations, and we'd also submit that it also resolves the questions about defendant BNP Paribas related to the traffic in Switzerland as well as personal jurisdiction. If we look at the language in the complaint, we allege in our pleadings that roughly in 2012 that the defendant stopped engaging in U.S. dollar-denominated transactions. We never said that the defendant stopped any transactions in 2010. The error that the courts made below is reading that language and concluding that the trafficking had to end. But here's what we had in addition to that. Both in the attachments and plead in the complaint, we had admissions from both defendants that they transitioned from U.S. dollar-denominated transactions with the Cuban National Bank to euro-denominated transactions with the Cuban National Bank and other Cuban entities. And that's what sets this case apart. What the defendants want this court to do is an inference in their favor at the pleading stage that because they stopped using United States dollars, trafficking must end. First of all, we know inferences in favor of the defendants are not allowed at this stage of the case. In addition to that, such an inference would be implausible. These defendants made $13-plus billion trafficking with the Cuban National Bank and related Cuban entities. The idea that they stopped trafficking once their transactions became legal is implausible. This court should reject it as a matter of course. Turning briefly to the statute of repose and statute of limitations issue regarding whether or not 6084 is a statute of repose, we think the Pujol court respectfully got that wrong. The Pujol court relied on the fact that the statute barred any trafficking claim two years after the cessation of trafficking. But Congress has used similar language in the Fair Housing Act to encompass the continuing violation theory, which is precisely what we've alleged here. And we cited that in the brief. It's 42 U.S.C. 3613A1A. An additional statute in the Securities Exchange Act also has similar language, which courts have remarked that it's a statute of limitations, not a statute of repose. The Seventh Circuit in the Short v. Belleville case, which we cited in our brief, referring to Section 20A.B.4, also has similar language. The CalPERS case, it's not one-sided. It did not rest the viewpoint that the statute at issue there was a statute of repose just because it was pegged to the last active defendant. There are other items that the CalPERS court also addressed, which we contend supports that this statute, 6084, is a statute of limitations that would allow equitable tolling. So, number one, there is no clear and definite language in the statute that suggests it's a statute of repose. For instance, there's no language that says, in no event shall there be a claim. That language is just simply not there. Nor is this statute peered with a shorter statute of limitations period. That's another indicator that the CalPERS court looked at in determining whether or not the Supreme Court was dealing with a statute of repose versus statute of limitations. When Congress legislates, we all agree, it legislates under the backdrop that equitable principles and common law principles would be at work. What our friends on the other side want you to believe is that enacting this very sweeping legislation that was designed not only to bring democracy to Cuba, but also to bring compensation to these US nationals, that Congress did not have any such limitations, that it wanted a statute of repose that would cut their claims off at the legs within two years. It wanted to do both. Absolutely. Congress wanted to do both. But doesn't the fact that the president is allowed to basically suspend this act suggest that it was more interested in regime change than compensation? I disagree. I think, well, if I can, the fact that Congress allowed the president to suspend it, it's appropriate because what they're seeking to do is to do a balance between the executive right to look at and see what's going on with Cuba and how that affects the executive relationship with other governments throughout the country. Well, what it means is that people who are awaiting compensation are going to be told they've got to wait a year, two, a decade, two decades, three decades. I mean, that would seem to be suggesting that the regime change is a more important goal. Well, I would disagree with that, and here's why. Congress only created one instance where regime change would eliminate all the causes of actions, and that's where there was a regime change. The point is the delay itself is a suggestion that this is a secondary goal. If it was a primary goal, then you wouldn't be delaying the ability of folks who were deprived of their assets by the Cuban government from seeking relief now. Well, I think if you look at that one provision, you could perhaps conclude that, but I think you should look at some other provisions and also follow the plain language of that statute. That statute establishes broad liability for participating in traffic. It establishes trouble damages. It establishes liability for damages that respect original confiscation. So I think all those provisions taken in total negate the idea that Congress was unconcerned with compensation for plaintiffs such as ours. I didn't say unconcerned. I just said the primary, and these other things you mentioned really seem to me also to be designed towards regime change. Trouble damages is basically in order to inflict pain on the regime so that they would understand that they need to turn around. I see that my time has expired. May I answer your question? Sure. So the trouble damages is not against Cuba. The trouble damages is against the defendants, the French banks. No, I get that, and then that would hopefully then put pressure on Cuba to change the regime because either banks and others won't do business with them or they will pressure Cuba to turn things around, and that would be beneficial presumably. But there's also an alternative view, Your Honor, and that's that Congress wanted for defendants who were put on notice that American citizens have a claim to these properties and they're not being compensated and you continue to reap billions of dollars, then you're going to have to pay for that. That's an equally valid purpose for why Congress agreed to this particular framework, and we can't eschew the congressional language because we don't like the results or because we want to hide and prevent discovery to occur. I'd like to reserve the rest of my time for rebuttal. Okay. We'll now hear, or I guess we're going to split time between Mr. Rothfeld and Mr. Boccuzzi. Mr. Rothfeld, you've got five minutes. Yes, thank you, Your Honor. May it please the Court, Charles Rothfeld, Mayor Brown, representing Societe Generale, and as the Court noted, I'm dividing argument this morning with Carmen Boccuzzi, representing P&D Paribas. As to both banks, the appeals can be entirely rejected on a number of independent grounds, which Congress established as separate central limitations on Helmsburg and liability. So to avoid duplication in our arguments, I'd like to focus on Repose and Sienter, and Mr. Boccuzzi will address the remaining. So you're going to do Sienter and what was the first one? And Repose. And Mr. Boccuzzi will address the remaining flaws in the plaintiff's claim. As to both Repose and Sienter, the claims should be entirely rejected, can be rejected on a straightforward application of the familiar Helms, familiar Cromley-Iqbal pleading standard as three experienced district judges recognized on their very close review of the pleadings on this case. And to start with the two-year time bar, that is a statute of repose. The language, as Judge Schack recognized, is quite clear, unambiguous. Section 1684 says action may not be brought more than two years after the trafficking giving rise to the act and has ceased to occur. That ties the running of the time limit directly to the last culpable act of the defendant, and the Supreme Court has said repeatedly that that kind of formulation is a nearly dispositive indication that the statute is one of repose. And the significance of that is, as my colleague recognized, is that statute of repose is not subject to equitable tolling. I should add, just to kind of kick up on observations made by Judge Sullivan, that the understanding that this is a statute of repose follows not just from that statutory language, although that's sufficient, but from the entire kind of structure of the statute, which cuts off liability in a number of instances based on acts that occur. And the congressional purpose is quite clearly to place pressure on Castro regime by inducing companies to stop trafficking in assets in Cuba. That is stated very clearly in the statement of findings, in legislative purposes. Even as to the findings that- Why wouldn't Congress intend to influence companies to stop doing business with people who have stolen assets at any time? I think that the Congress-the goal was to stop companies from engaging in transactions that made use of confiscated property with the purpose of placing pressure on the Castro regime. And so I think that there's no doubt that Congress wanted to do that, as you say, at any time. But you're actually arguing then that the pressure was on, and the pressure was on all those years. And the point is to stop companies from engaging in this business. Whenever they stop, the value of the repose period is it says you are off the hook forever if you stop now. As soon as you stop, two years go by, you don't start trafficking again. So you're saying that's the mechanism. It's to get companies to stop. Exactly. There's no doubt that that was the purpose of this liability regime. And that is why statute of repose is really an essential mechanism because a tollable statute of limitations does not accomplish that. In fact, if the statute is tolled, as our friends argue, by the running of the presidential suspension of the cause of action, that actually gives the companies perverse incentive to continue trafficking forever until the suspension ends because it doesn't add to their liability, given the extraordinary nature of the Helms-Burton liability provision, which is in the amount of the entire value of the confiscated property liability that attaches as soon as trafficking begins. And so it is only a repose period, non-tollable repose period, that cuts off liability for companies and therefore induces them to stop trafficking now rather than wait into the future. And I guess if I can turn quickly to the implications of that, that means that the plaintiffs have to demonstrate that the defendants were engaged in business with Cuban Central Bank, the BNC, making use of confiscated property within two years prior to bringing the suit. They do not do that. And as Judge Furman, Judge Fiskosol, Judge Wood all recognize, the allegations here rely on U.S. government documents, a deferred prosecution agreement with SG and a plea agreement with BNPP. Those documents indicate that U.S. dollar denominated transactions ended definitively in 2010. My friend refers to the conversion of some of these credit facilities into euros. Judge Furman addressed that in detail, and as he demonstrated, there's no indication that if these conversions took place, that anything occurred after 2010, even if we kind of make the speculative assumption that it did, there's no indication that it continued for many years into the repose period. Well, there's no way to link this sort of 2020 Swiss cash transaction to the earlier conduct. Well, that is certainly true. I should let Mr. Percozzi address that because that involves BNPP, which is his client. But I guess I would sort of make one final point on the speculative nature here, which is not only is there no indication that any of these transactions continued, there's no indication that they involved BNC, the Cuban Central Bank, and they have to have involved that in dealings with BNC in order for this to compensate for trafficking. And that is entirely a matter of speculation. There is no indication in the U.S. government documents that any- Were you going to say more on Sienta or is that- I think that's sufficient on Sienta. If I can add very briefly on-that's on repose, but just on Sienta very quickly.  That's what I mean. I wasn't sure if that-if you had-if the overlap was what you were going to say on Sienta or you intended to say something else on Sienta. Something else on Sienta, which is under the very strict knowingly and intentionally Sienta requirement in Helms-Burton, the plaintiffs are obligated to demonstrate that the defendants were aware that they were engaged in transactions that made use of confiscated property. Their theory is that, you know, all of private Cuban banking assets were confiscated in 1960, that they went to BNC, and that, you know, somehow that is the confiscated property that is involved in this transaction. There is no indication, there's no allegation of the complaint, that the defendants were aware that confiscated property went to BNC, and that can't be assumed. Well, I mean, I guess I'm curious about that. I mean, it seems to me everybody knows that the Cuban National Bank is, you know, comprised of banks that were seized at the time of the revolution, right? You're saying your clients were shocked, like Claude Rains and Casablanca, they had no idea of that? Well, I guess I have two points to make about that, Your Honor. One, on that point, we are saying that if we assume that French banks were aware, and French banks in 2000 were aware of what happened in 1960 in Cuba, and that private banking assets were confiscated, I think we can't assume that they knew that those assets ended up with BNC. There are any numbers. But you're saying there's no traceability, or that there is some kind of traceability requirement, I think is what you're saying. No, I'm saying as the scienter, and again, let me take a step back. There are a number of arguments that we have that are separate and independent. There's a trafficking argument, and no trafficking occurred within the meeting of the statute that Mr. Percusi will address. Just focusing specifically on scienter, the plaintiffs have to demonstrate that the defendants were aware at the time of these transactions that they were involved in use of confiscated property. That means they had to know that BNC held confiscated property in the year 2000 when these transactions began. There are a number of reasons why that showing has not been made, and I think could not be made. One is that they have to demonstrate that the French banks were aware in 2000 that these confiscated assets went to BNC rather than some other Cuban government agency, and I think there's no reason we can make that assumption. Even putting that aside, we also have to demonstrate that the defendants were aware in 2000 that any confiscated assets that were assigned to BNC 40 years ago remained with BNC and were used in these transactions, and I think they can't make that assumption. Well, I mean, look, money's fungible, so I guess either one of these is going to be a broad theory. I mean, your theory is pretty broad as well in a sense. I mean, so if there's a billion dollars that's seized in 1960 at the time of the revolution, and by 2020 we're up to $100 billion, I guess their argument is money's fungible and that originally seized money is still there in a sense. Yours is that they have to prove traceability. They have to show that the dollars seized from the Cuban bank, the private Cuban banks, your client's bank and his client's banks, somehow get traced over the course of 60 years to wherever they end up. That's what you're arguing, right? Well, let me be very clear. That would be a tough thing to prove ever if that's the case, right? Banks are basically never going to be on the hook for this. Well, I think that – let me just – This is basically a total pass for banks is what you're saying? Absolutely not, John. Okay. So how would anybody ever be able to prove that the assets that were seized in 1960, in the form of a bank, the bank assets, are what's going in and out of BNP Paribas? Paribas or Paribas? I'm sorry? How do you say it? Paribas or Paribas? Paribas. Paribas. I should let Mr. Bacuzzi and Mike report on that. That's fine. But first of all, of course, this discussion has nothing to do with repose, which is an independent set of reasons. You're saying that they have to know that the dollars they're exchanging were original dollars that were seized in 1960. Yeah, and, again, to be clear, repose is a separate independent argument. This doesn't concern that. I get it. As to scienter, I think the statute – the statute of language is quite clear that there has to be – knowingly and intentionally transaction. That means that there has to be knowledge that the confiscated assets were involved in the transaction. And I think, first of all, it can't be assumed that these assets seized in 1960 – it is true they're money and they're fungible in a sense. But, you know, as this court in the Freund case, Judge Sullivan, on the district court recognized, but the fact that assets were obtained by a foreign government decades ago, it can't be assumed that those assets were retained. Right, but how would you ever – I mean, how would anybody ever prove in the passage of decades, how would you ever prove that the dollars seized or the dollars being trafficked now? Well, there are ways in which one – you could demonstrate that particular accounts were retained by BNC and would use a particular transaction. You could demonstrate that the book of loans, that a book of depositors was – I'm sorry, but why not view the banks themselves as the seized assets? I mean, if Cuba seized a chain of grocery stores, the grocery stores would be the stolen assets. You wouldn't look to see if they still have the lettuce from 1960, would you? No, but you would look to see whether they still had the facilities, the physical stores themselves. And one of the allegations here is that the branch facilities were seized. There's no allegation that those were used that had anything to do with the transactions that are involved. It's an ongoing business. If you steal an ongoing business as a communist government does, then that ongoing business goes on, and it may morph and change over time, but the assets that's stolen you could consider to be the bank. Indeed, that is what was stolen. It was the plaintiff's ancestor's assets, which was, I believe, the shares in the bank. But I guess, again, I have to emphasize that the requirement is that there be knowledge that the assets were being used. And the question is, what assets are we talking about? Or traffic. They have to be trafficked, right? They have to be trafficked. I'm going to try to traffic a bank as opposed to the assets of a bank. But I interrupted you. Go ahead. Well, if we have to identify the assets that are used in the transaction, and, again, this may be a traffic issue rather than a center, and it's certainly not a repose issue, and I can let Mr. Bercuzzi elaborate on that. But the Congress, I think, was very clear. Helms-Burton is in a very unusual statute in a number of respects, one of which establishes potentially enormous liability. And so it's broad in that sense. But as a consequence of that, Congress established very significant, very clear limitations on the scope of the cause of action. And one of those is that there has to be knowing and intentional use of the confiscated assets. Well, usually this is pretty easy. Banks is where it's tricky, right? If it's a cruise ship showing up to a dock that was owned by somebody in 1960, I think they're going to have a claim, right? It's a hotel. That's pretty easy. It's sort of obvious how that can be traced. I think the problem here may be that the plaintiffs are making a very sort of loosey-goosey theory of trafficking. Well, maybe. But I guess their concern is that yours is a basically get-out-of-jail-free card for banks, who are in many ways the ones who are engaging in the most prevalent conduct or transactions with the Cuban government. Well, and I guess I would say two things about that, Colonel. One is that there are ways in which one can trace particular bank assets. If there are particular bank assets to be traced, there are the physical assets, there's the book of loans. You don't do that. You just show up in Havana and ask for some records. It's going to be pretty tricky, no? Well, the question is, I suppose, it is their theory of trafficking. They are obligated to sort of make the necessary showing. Look, their theory is broad. I get it. Mr. Robinson is getting up here again, and we're going to have a problem with it. It's very broad. But yours is so narrow as to be nothing, it seems to me. There's never going to be a case against a bank, it seems to me, unless it was a dollar that they kept on the wall to show it was the first one we ever seized. Well, I don't want to take issue with the Court's proposition, Your Honor, but I guess I would say a couple of things. One is, again, there are particular bank assets that are traceable, and to the extent that they are used in particular transactions in particular ways. That is something that the defendants could know, and there's no allegation that there's anything like that going on here that they do not. So your view is that we don't need to get to Sienta, though? We've got other ways to scan this. No, that is absolutely correct, Your Honor. And as Judge Furman found, I think very persuasively, there is a fatal repose problem here for the reason that we began this argument by discussing. All right. Well, you've got a lot more time than you bargained for. Well, and probably you do as well, Your Honor, but I appreciate the indulgence. Thank you so much. That's all right. Okay, so Mr. Boccuzzi or is it Mr. Boccuzzi? How are you going to pronounce it? Boccuzzi. What? People in my family say it both ways, Your Honor, so I say Boccuzzi. Boccuzzi. All right. Well, that's the more authentic way, I guess, right? I'm not sure. Boccuzzi would be the way we would say it in Brooklyn. Exactly. Thank you. Good morning, Your Honors, and may it please the Court. Carmine Boccuzzi, Cleary Gottlieb for BNP Paribas. I'd like to focus on the issue of trafficking, which Judge Furman in his decision focused on the period in the two years preceding the filing of the Pujol action in 2020, and there's a little bit of difference of timing because my client was added into a second amended complaint in the Banco Nunez case. But anyway, those later periods is what Judge Furman focused on in terms of saying plaintiffs have not satisfied the trafficking requirement for the statute, have not stated a claim, but I think the reasoning there and the correct reading of the statute would also apply, give this Court an alternative ground for affirming as to the earlier time period, so the alleged trafficking that occurred in the 2000 to 2010 time period that's referenced in the statement of facts for the guilty plea BNPP entered into and the deferred prosecution agreement by Societe Generale. So the definition of trafficking, 602313A, trains on use of confiscated property, and then you read that with 22 U.S.C. 6082A1A, which is at the special appendix at 92, which creates the private right of action for this statute, and that makes liable anyone who traffics in property which was confiscated by the Cuban government, so we go to the definition of trafficking, and it gives that right to any United States national who owns the claim to such property. So we've got to be looking at the pleading and saying where is the confiscated property, and are these allegations that they're making pointing to actual use or trafficking in confiscated property by either the French banks in this case, and I think the answer is clearly no, and the Court below is correct in finding that. For the period near to the filing of the brief, so within two years, the repose period, if you look, for example, at the second amended complaint in the pool hole action in paragraph 56, that's at JA 328, they sort of run through their sample set of what they claim are the trafficking activities, and all of these involve allegedly, for my client, BNP, dealing with some European counterparty, which allegedly had some exposure to Cuba or Cuban property. So there's one about a German client, an alleged German client of BNP Paribas that wanted to make an investment or have dealings with the Cuban government-owned airline. None of that involves plaintiff's confiscated property on its face. Judge Furman says you're asking me to make an assumption that this somehow involved a Cuban bank, and so I think he would have thought if there was a well-pleaded allegation that it touched a Cuban bank, maybe they're getting closer to the line, and he says that's not there, and it's also not there that there's a Cuban financial institution. It's not enough to say that it had to be BNC, Banco Nacional de Cuba, the Cuban government bank. And so just based on that, these claims all fail the time period near the 2020 filings of these complaints, and that logic applies as well to the alleged provision of Swiss bank notes by BNPP in Switzerland, according to the allegation in the complaint. No one alleges those dollars were confiscated money, either conclusively or in any other way, and no one alleges how even if those dollars were supplied to BNC, that would be somehow trafficking in the confiscated property of the plaintiffs. And so I think all that holds well, but now if you think about it and you look at the definition of trafficking and you go back to the earlier time period, so again, the allegations which I believe and defendants believe and the lower courts believe are off the table because of the repose period, the allegations in there are the things that my client pled guilty to, for example, are making loans to a Dutch company to finance purchases of oil destined to be refined and sold in Cuba. That has no connection to any alleged confiscated equity in a bank in 1960 by BNC. There's also references to credit facilities to Cuban banks. BNC is not named by reference. I think the court below accepted that that had to involve BNC. But even if you accept that there was a, quote, loan or credit facility from one of our clients to BNC, again, go back to the definition and the private right of action, how is that a use of plaintiff's property? I don't think that this is a get out of jail free card because we know banks do have assets. They have real estate. They have bank branches. They have books of loans. None of that is referenced in terms of we did a deal that involved financing what were their bank branches. That didn't happen. That's not in the complaint. There's nothing about acquiring or refinancing a book of loans or securitizing or anything like that. So I think our theory- Right, but I mean, I guess the point is this. If they see, yeah, the bank's branch is worth something, but generally the assets of a bank are, you know, is the money that they hold. And so if that money gets taken and then it gets coming over with a whole bunch of other stuff, I mean, what chance is anybody ever going to be able to have to show that that money, that asset, has been trafficked? The answer is none, right? If that was the hypothetical, yes. I don't see how you trace that or could trace it. And it's also interesting, the findings that precede, that are in the act itself, talk about, for example, in the first five years of the 1990s, right up to before Bill Helms-Burton was enacted, the Cuban economy had, in fact, contracted by 60%. And so money is actually leaving this system. So I don't even know if the facts, I don't think we have an idea of like, Your Honor, in the earlier hypothetical- What it means is that Mr. Robinson's clients are just out of luck, is what we're saying, right? I think in the context of this claim, they are out of luck. They might get the value of the branch that was seized in 1960, maybe. If they could show that someone was actually trafficking in that branch. Yeah, I try to imagine how this would work, like the bank is going to be, you know, the foreign bank is going to be financing loans to put in really great automatic teller machines at those branches. Well, what the banks actually said they did or pled guilty to doing back in that time period were making loans. And again, those loans have no connection, even on the face of this complaint, to any property that was confiscated from these plaintiffs. And again, they speak very broadly. They just said the banks held property, the plaintiffs had property, including the equity in the banks. No one is transacting in the equity of these banks. I think the statute has its requirements. It obviously applies much more clearly in the context of a dock, a piece of real property, a hotel. But if you train on the language and the requirements of the statute, you just don't have allegations of use of their confiscated property by these banks. And I think that would lead you to affirm both on the grounds that Judge Furman applied. There's also the personal jurisdiction point that Judge Vescoso went with for the parcels of cash allegation. Again, that's about activity wholly outside the country between two foreign entities. And since it was a personal jurisdiction issue, we put in a declaration that BNP Paribas doesn't have operations in Switzerland. It has a separate subsidiary, BNPP Suisse. And so, of course, it's black letter law that you can't, without more, base personal jurisdiction contacts on the conduct of an affiliate of a defendant. BNPP Suisse is not in this court. So even if one accepted that that happened, which, again, there's no well-pleaded allegations, there'd be no personal jurisdiction. So just so I'm clear, though, if we were to agree with you with respect to the statute of repose, we'd still have to get to personal jurisdiction, right? You could, no, you could affirm on statute of repose plus Judge Furman's analysis as a matter of 12B6. I guess, I mean, statute of repose plus Judge Vescoso's take on personal jurisdiction would resolve the whole case, am I right? That's correct as well, for BNPP. That's what I meant to ask, if I do it inartfully, if that's where I was going. Yeah. Okay. Unless your Honor had further questions. No. All right. Thank you, Mr. Bucuzzi. Thank you. All right, Mr. Robinson, back to you. My friends on this side left a lot of facts in our complaint out when discussing the case. So one thing they have not mentioned and what none of the three judges below mentioned is the stop snitching email that Paribas sent to its mid-level employees when we asked the court for additional time to find further support of timely allegations. That's a reasonable inference that there is trafficking that would occur. Why would Paribas tell its mid-level employees don't talk about our operations regarding the plea agreement with Cuba if there were no operations? That's a reasonable inference that should have been taken in our favor and, unfortunately, the three judges below. That would be a reasonable inference taken in your favor to suggest that there is trafficking of assets that are your client's assets? It's a reasonable inference that the trafficking did not cease in 2010, that it continued. And mind you, it's not a leap of logic because the defendant itself referred to the plea agreement regarding the Cuban National Bank. It's a reasonable inference and deserves to be in our favor. Another quick thing, I see I have one minute left. I'll try to be brief. You didn't hear any argument from any of the two attorneys on the other side about the statutory language in the alleged statute of repose and why it should be read in their favor. They just want you to rubber stamp a decision. Look at the CalPERS decision. It's very clear that there are a number of factors that go into it, and Congress did not intend to cut off all liability after two years. They did that in the Fair Housing Act and the Securities and Exchange Act. My friends on the other side assume that if the cause of action is not told during the president's suspension, there is then somehow a free check to continue trafficking until the period is lifted. How would a defendant know when President Trump is going to lift the suspension period? You wouldn't know. Their rationale just simply does not pass the smell test. And then lastly, as far as personal jurisdiction goes, in the Succasaurus Court, I'm sorry, I see my time is about to expire. Can I make this one last point? Slow down. Okay. You see how generous I am with time. I appreciate it. I keep getting ugly looks from Jacob. I appreciate it, Your Honor. So if I can then slow down and have liberties of the court, regarding the personal jurisdiction issue, we have to be clear. SOCGEN has waived any personal jurisdiction arguments in the Succasaurus Court. We were in the Southern District of New York, sorry, Southern District of Florida, excuse me, originally, and they said send us to New York, and that's why we came here. So they can't complain about personal jurisdiction at this point. As far as Paribas goes, what the defendants are trying so strongly to do is to chop up our case into little bitty bites. But really, that's not our case. That's not what we pled. A jury is allowed to disagree with them that this is discrete sort of individual transactions. When you look at the Swiss trafficking, parcels of cash that Paribas is giving to a Swiss bank, you have to put that in the context, the mosaic of all the other allegations that we've pled. And it's not just our allegations. It is the admissions of the defendant. But it seems to me that your theory basically is contingent on the notion that dollars seized in 1960 have tainted all dollars accumulated by the Cuban banks since. I mean they would say there's other problems too, but even taking you at your word, isn't that a problem? It's not because that's not our theory, Judge. So what is the theory? Or trafficked by the defendants have anything to do with your client's assets? I go back to what Judge Jacobs said about seizing a grocery store. It's not about whether the cabbage today is a cabbage that existed. The actual grocery store was taken and incorporated into BNC. Congress was explicit and expressed. It said trafficking can include the mere possession, possession of confiscated assets. But the bank doesn't possess the Cuban National Bank, right? They're transacting with them. I was going to try to get there. So let me just take it step by step. The statute says a trafficker is one who merely possesses confiscated assets. We contend and have pled that those confiscated assets are Banco Nunez and Banco Pujol, and those are held by the Cuban National Bank. Then Congress went a second step further, and they said if you participate in the trafficking of someone else, including a Cuban National Bank or a Cuban entity, then you yourself are a trafficker indirectly. That's how you thread the needle, amongst one of other theories we had in the complaint. That's what we pled, and we've heard nothing, nothing from the other side, as to how we have not set forth a cause of action based on the plain reading of that statute. They just haven't done that. And then one last thing. If this is not a statute of repose, we as a plaintiff don't have any obligation at all to plead in the complaint allegations that there was trafficking within the two years before the statute. And let's assume the court agrees with my friends on the other side that it is a statute of repose. The only authority that they have that supports that viewpoint that we have to affirmatively allege timeliness is based on a Ninth Circuit case called the Toomes case. And the Ninth Circuit itself has rejected that notion as archaic. The Ninth Circuit applied that rationale not really to statutes of repose, but to statutes of limitations as well. What the defendants are arguing is to take Rule 8B and turn it on its head and require that even when it comes to statute of limitations, plaintiffs have to plead around an affirmative defense. That's just simply not the law.  Our clients' properties were not only just taken in 1960. They've been trafficked by these banks to the tune of billions of dollars. Give us the right to take some discovery. That's all we're asking for. We're not asking you to decide the case right here and now. We just want a chance- I think you're approaching having taken a whole day in court today. Well, I appreciate the indulgence, and I thank you for those recent requests that the court reverse the decisions below in addition to the reasons we stated in our brief. Thank you for your time. Thank you all. Very well argued. We will reserve decision, but it's an interesting and important case. Thanks.